UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT P. McDANIEL,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>N.P. SELAH WORLEY,<br><br>　　　　　　　　Defendant. | Case No. 1:22-cv-00240-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Robert P. McDaniel is a prisoner in the custody of the Idaho Department of Correction (IDOC), who is proceeding pro se and in forma pauperis in this civil rights matter. McDaniel claims Defendant N.P. Selah Worley, a nurse practitioner providing medical treatment to IDOC inmates, violated McDaniel's Eighth Amendment right to adequate medical treatment with respect to his broken wrist. (*See Succ. Rev. Order*, Dkt. 9, at 4; *Sec. Am. Compl*., Dkt. 29, at 8-9; *Order*, Dkt. 32, at 2) (permitting McDaniel to proceed on the Second Amended Complaint against Worley). McDaniel brings his claim under 42 U.S.C. § 1983, the federal civil rights statute.

Worley moves for summary judgment, arguing that McDaniel failed to exhaust his administrative remedies under the Prison Litigation Reform Act and that, even if he had exhausted his claim, Worley did not violate McDaniel's Eighth Amendment right to adequate prison medical treatment. (*See generally* Dkt. 47-1). Worley has also filed a motion to seal her supporting declaration. (Dkts. 48, 49).

MEMORANDUM DECISION AND ORDER - 1

The parties have filed their respective briefing, and the motions are ripe for the Court's consideration.[1] Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, the Court will grant Worley's summary judgment motion because no genuine dispute of material fact exists. Rather, the uncontroverted evidence shows Worley did not violate McDaniel's Eighth Amendment right to adequate medical treatment.[2]

## 1.    Worley's Motion to Seal

Worley moves to seal certain documents filed in support of her summary judgment motion because they contain medically sensitive information. Specifically, Worley seeks to seal her Declaration and McDaniel's underlying medical records that are attached to that Declaration. (Dkts. 48, 49).

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 & n.7 (1978). "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana v. City of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks and citation omitted). To overcome this presumption, a party must articulate compelling reasons in favor of sealing a judicial record. *See id.*

Moreover, a plaintiff asserting a medical treatment claim under the Eighth Amendment has already placed his medical treatment at issue. Though some privacy interest in those records remains, the "public's right of access to dispositive motions and the exhibits filed within is

---

[1]    The Court grants McDaniel's Motion for Extension of Time (Dkt. 51) and deems his response to Worley's summary judgment motion is timely.

[2]    As a result, the Court does not address Worley's exhaustion argument.

protected to an even higher standard by the First Amendment." *Bailey v. Wexford Medical Service*,

2014 WL 4541266, at *5 (D. Md. Sept. 10, 2014) (unpublished) (citing *Rushford v. New Yorker*

*Magazine, Inc*., 846 F.2d 249, 253 (4th Cir. 1988)).

In *Bailey*, the United States District Court for the District of Maryland explained how a

court must balance the public's right of access with the inmate's right to privacy in sensitive

medical information:

> The court agrees that Bailey has placed his medical
> information at issue by asserting in his complaint that he repeatedly
> cut his own wrist and then fabricated a story of sexual assault so that
> he would be taken to a hospital to receive proper medical treatment.
> The court must therefore look to, and rely on, the medical records
> surrounding his treatment. But given the quantity of personal
> medical information in the medical records that is unrelated to the
> issues in this case, and the fact that this information is scattered
> throughout the records, Bailey's interest in sealing the full medical
> records is compelling. In contrast, the factual information referenced
> in Wexford's memorandum in support of its motion to dismiss or,
> in the alternative, motion for summary judgment, is inextricably tied
> to the issues in this case, as is the factual information in Dr. Ottey's
> affidavit.

*Id*. at *6. To "narrowly tailor the denial of [public] access to serve [the plaintiff's] compelling

interest in not making public a large amount of medical information unrelated to his claims," the

*Bailey* court granted the motion to seal the plaintiff's medical records, but denied the motion as to

the parties' briefing and the doctor's affidavit. *Id.*

The Court finds the *Bailey* court's approach persuasive. In this case, the public has a strong

interest in knowing about prison medical treatment, which is funded entirely by taxpayer dollars.

Whether an inmate's constitutional rights are being violated by state actors is important

information for the public to know. The Court also recognizes that McDaniel has an interest in

keeping his medical records private and that he should not have to sacrifice all his privacy rights

to bring a civil rights suit alleging unconstitutional government conduct. Having balanced these

factors, the Court grants Worley's motion to seal McDaniel's medical records attached to Worley's Declaration. The parties' briefing and other associated documents, such as Worley's Statement of Undisputed Material Facts, remain accessible to the public.

**2.      Worley Is Entitled to Summary Judgment**

For the reasons explained below, McDaniel cannot establish Worley violated McDaniel's Eighth Amendment right to adequate medical treatment.

### A.      *Standard of Law Governing Summary Judgment*

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

In resolving a summary judgment motion, a court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Disputes over irrelevant or unnecessary facts will not

preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). A court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247-48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If the plaintiff fails to produce evidence, or if the evidence produced is insufficient, the

Court "is not required (or even allowed) to assume the truth of the challenged allegations in the complaint." *Id*. A verified complaint by a pro se prisoner, however, "may be treated as an affidavit to oppose summary judgment, but only to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987)).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In cases involving pro se inmates, the court liberally construes the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, although pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto v.*

*Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] . . . argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

       **B.**    ***Factual Background***

       This section includes facts that are undisputed and material to the resolution of the issues in this case. Although McDaniel contends the medical records Worley submitted have been "improperly altered and falsified" (*see Memo. in Opp.*, Dkt. 52, at 2), McDaniel provides no admissible evidence to support this claim. Further, McDaniel does not contest any particular fact in Worley's Statement of Undisputed Material Facts (SUMF). (*See* Dkt. 47-2). Indeed, McDaniel did not respond at all to the substance of Worley's Eighth Amendment argument. (*See generally Memo. in Opp.*). Because McDaniel has not properly addressed the facts in Worley's SUMF, which are based entirely on McDaniel's medical records, the Court considers those facts undisputed. *See* Fed. R. Civ. P. 56(e)(2).

       In December 2019, McDaniel complained to prison medical staff that he slipped, fell on his wrist, and heard a "pop." McDaniel had broken the wrist several years earlier. McDaniel received an X-ray on January 2, 2020. (SUMF ¶¶ 2-3). Less than two weeks later, Worley examined McDaniel. Worley reviewed the X-ray, noting that McDaniel had "an old healed fifth metacarpal fracture and dorsal soft tissue swelling over metacarpals with mild degenerative joint changes." (*Id.* ¶ 3). McDaniel was given a wrap for his wrist and ibuprofen for pain and was referred to an outside provider. (*Id.*). Worley told McDaniel to contact medical staff if his pain worsened. (*Id.* ¶ 4).

On February 25, 2020, McDaniel informed a mental health clinician that "his arm was healed." (*Id*. ¶ 5). Over a year later, in April 2021, McDaniel fell on a wet floor and tried to break the fall with his right wrist. McDaniel felt a "snap" when he fell, and his "fourth and fifth fingers were numb." (*Id*. ¶ 6). Worley evaluated McDaniel the same day and scheduled an X-ray. Worley also scheduled a consultation for an outside practitioner after the X-ray results became available. (*Id*. ¶ 7). McDaniel refused the X-ray. (*Id*. ¶ 8). McDaniel also refused a chronic care appointment on April 27, 2021. (*Id*. ¶ 9). Other prison medical personnel evaluated McDaniel on May 4 and 11, 2021. Nurse Practitioner William Rogers noted McDaniel "refuse[d] to be referred to contracted ORTHO provider [due to] prior interactions and prefer[red] to [follow up] in the community after release" from prison. (*Id*. ¶ 11).

McDaniel received a new X-ray on May 13, 2021. The technician noted that McDaniel "made it very clear during his X-ray visit that he does not want anything done while he is here in prison. . . . He wants to wait till [sic] he is out of prison in 5 months so he can go to whatever surgeon he wants and have them rebreak and fix it." (*Id*. ¶ 12) (capitalization normalized). McDaniel "didn't even want X rays, but the provider talked him into at least that. [McDaniel] was pleasant, but very clear that he doesn't want our care." (*Id*.). On May 26, 2021, McDaniel signed a form refusing consent to onsite treatment, follow up evaluations, and offsite orthopedic consultation. (*Id*. ¶ 14).

McDaniel was examined by various other providers in June, August, October, November, and December 2021, as well as February and March 2022. (*Id*. ¶¶ 17-27). Worley did not evaluate McDaniel again until April 7, 2022. In the meantime, Dr. Chlebeck, an outside specialist, evaluated McDaniel. (*Id*. ¶ 27-28).

At McDaniel's April 7, 2022 examination, McDaniel informed Worley that Dr. Chlebeck had recommended surgery for McDaniel's wrist. McDaniel informed Worley, however, that he "need[ed] to wait to have surgery . . . to show the courts just how bad my wrist is." (*Id.* ¶ 28). Notwithstanding McDaniel's statement that he did not want surgery at that time, Worley planned to "submit a surgical request and six-week follow-up per Dr. Chlebeck's recommendation." (*Id.* ¶ 29).

McDaniel filed his initial complaint in this case in June 2022. The current iteration of McDaniel's Eighth Amendment claim against Worley is alleged in the Second Amended Complaint, which was filed on September 26, 2023.[3] (*See* Dkt. 29). The only allegations in that complaint with respect to Worley's treatment of McDaniel's wrist injury after Worley's April 2022 evaluation are that McDaniel was "left in ongoing improperly treated pain for over 2 years and … the necessary corrective surgery has not been performed." (*Id.* at 8).

### C.   *Discussion*

#### i.   Eighth Amendment Standards of Law

McDaniel brings his claim under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects

---

[3]     Prisoners are usually entitled to the benefit of the "mailbox rule," which provides a legal document is deemed filed on the date the prisoner delivers it to the prison authorities for filing by mail, rather than the date the clerk actually receives it. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights actions).

prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement.

To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060.

"If a [prison official or medical provider] should have been aware of the risk, but was not, then the [official or provider] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did*

MEMORANDUM DECISION AND ORDER - 11

know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th

Cir. 1998); *see also Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

  ii.  <u>McDaniel Cannot Establish that Worley Acted with Deliberate Indifference to McDaniel's Serious Medical Needs in Violation of the Eighth Amendment</u>

   Worley first evaluated McDaniel's wrist injury in January 2020. Noting that McDaniel had "an old healed fifth metacarpal fracture and dorsal soft tissue swelling over metacarpals with mild degenerative joint changes," Worley prescribed pain medication and a wrist wrap. (SUMF ¶ 3). Worley also referred McDaniel to an outside provider. Worley next evaluated McDaniel's wrist in April 2021, the same day that McDaniel reinjured the wrist in a fall. Worley scheduled an X-ray and a consultation with an outside practitioner to review the X-ray results, but McDaniel refused the X-ray. (*Id*. ¶¶ 7-8). Worley next examined McDaniel's wrist injury on April 7, 2022. Even though McDaniel told Worley he did not want surgery at that time, Worley still submitted a surgical request and six-week follow-up as Dr. Chlebeck, the offsite specialist, recommended. (*Id.* ¶ 29).

   This evidence is sufficient to meet Worley's initial burden of establishing that Worley did not disregard a known risk with respect to McDaniel's medical needs. Rather, Worley was responsive to McDaniel's injured wrist and provided appropriate and reasonable medical treatment. *See Farmer*, 511 U.S. at 844; *Toguchi*, 391 F.3d at 1061. The burden thus shifts to McDaniel to show a genuine dispute as to whether Worley acted with deliberate indifference.

   McDaniel has not done so. As noted above, McDaniel does not dispute any particular fact Worley sets forth. In the Second Amended Complaint, McDaniel acknowledges Worley prescribed a "splint" and pain medication when he reinjured his wrist in April 2021. (*Sec. Am. Compl.*, Dkt. 29, at 8). Although McDaniel claims that he was "left in ongoing improperly treated pain for

MEMORANDUM DECISION AND ORDER - 13

over 2 years and . . . the necessary corrective surgery has not been performed" (*id.*), this generalized allegation does not support a reasonable inference Worley knew of and deliberately disregarded an excessive risk to McDaniel's health when treating McDaniel's wrist injury.

For a medical provider to attempt conservative treatment at first, rather than jumping immediately into recommending surgery, is not deliberately indifferent. Surgery evaluation and performance take time even outside of prison, due to insurance companies' rules and often limited coverage for certain procedures. As this Court has previously noted, "[p]rison is not, and should not be, different":

> Taxpayer funds are used for all prison health care, and the providers owe a duty to prisoners and, to a lesser extent, to the taxpayers to use conservative treatment when practical, and to carefully commit resources to more expensive procedures where necessary and where conservative treatments have failed. Surgeries have their own inherent risks that can be avoided through conservative treatments. Surgeries also often have lengthy healing periods which can vary according to the individual. Taxpayers themselves are subjected to this same course of required trial-by-error treatment and required approvals by insurance companies.

*Stephenson v. Corizon Med. Servs.*, No. 1:15-CV-00559-DCN, 2018 WL 1546420, at *11 (D. Idaho Mar. 29, 2018), *aff'd sub nom. Stephenson v. Young*, 754 F. App'x 620 (9th Cir. 2019) (unpublished). At most, McDaniel has shown he has a difference of opinion regarding whether Worley should have recommended surgery in April 2021. Such differences of opinion, however, do not support an Eighth Amendment claim. *See Sanchez*, 891 F.2d at 242.

Additionally, McDaniel fails to rebut Worley's evidence that, when Worley evaluated McDaniel in April 2022, she believed the offsite specialist's surgical plan should be followed despite that McDaniel himself said he did *not* want the surgery. This fact is certainly not evidence of deliberate indifference. Instead, it is evidence of a conscientious medical provider attempting to provide care notwithstanding the patient's desire not to receive treatment. McDaniel, like all

individuals, had a right to refuse the recommendation for surgery, but he cannot then complain to this Court that he did not receive the treatment he refused.

Worley has shown McDaniel cannot establish deliberate indifference, and McDaniel has not rebutted that showing. Accordingly, Worley is entitled to summary judgment as a matter of law.

## ORDER

**IT IS ORDERED:**

1.   McDaniel's Motion for Extension of Time (Dkt. 51) is GRANTED.

2.   Defendant's Motion to Seal (Dkt. 48) is GRANTED.

3.   Defendant's Motion for Summary Judgment (Dkt. 47) is GRANTED, and this entire action is DISMISSED with prejudice.

DATED: October 3, 2024

Amanda K. Brailsford
U.S. District Court Judge